UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Raphael Mendez,

                  Plaintiff,

vs.

F.M.C. Rochester,
Psy-doctor Maldonado, and
PsyODoctor Mckenzie,

             Defendants.      Civ. No. 06-3711 (JMR/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, as well as the Plaintiff's "Motion in Opposition to Dismissal or Summary Judgment."   The Plaintiff appears pro se, and the Defendants appear by Perry F. Sekus, Assistant United States Attorney.   For reasons which follow, we recommend that the Defendants' Motion to Dismiss, or alternatively, for Summary

Judgment, be granted, the Plaintiff's Motion be denied, and that this action be dismissed with prejudice.

## II. Factual and Procedural Background

In this action, the Plaintiff, who is currently confined at the Federal Medical Center, Rochester ("FMC-Rochester"), alleges that the Defendants John McKenzie ("McKenzie"), and Orlando Maldonado ("Maldonado"), who are mental health officials employed at FMC-Rochester, are attempting to medicate him against his will, in violation of his "Liberty Interest."  See, Complaint, Docket No. 1, at pp. 1-2.  In addition, the Plaintiff contends that he is illegally detained, and that, pursuant to Title 18 U.S.C. §4247, he should be returned to the Virgin Islands of St. Thomas, for a Hearing.  See, Plaintiff's Filing, Docket No. 4, at pp. 3-4.[1]

By way of background, the Plaintiff was charged with Federal offenses in the United States District Court for the District of the Virgin Islands.  However, prior to facing those charges, he was committed to the Federal Correctional Institute in Butner, North Carolina ("FCI-Butner"), for a competency evaluation, pursuant to Title 18

---

[1]The Plaintiff filed a Complaint, as well as an additional document, which we have indulgently construed as his attempt to amend his pleading so as to request an Order that would provide the Plaintiff with a Hearing.  For reasons which were detailed in our prior Order, see, Docket No. 9, we address both the claims presented in his Complaint, as well as those presented in his subsequent filing.

U.S.C. §4241.  See, <u>Declaration of Angela Buege</u> ("<u>Buege Decl.</u>"), <u>Docket No. 12-3</u>, at ¶3; Att. A.  On November 4, 2002, the Plaintiff was committed to the custody of the Attorney General, under Title 18 U.S.C. §4246, by the United States District Court for the Eastern District of North Carolina.  <u>Id.</u>  On June 15, 2006, the Plaintiff was designated to FMC-Rochester for hospitalization, and for the treatment of a serious mental illness.  <u>Id.</u>

In July of 2006, the Plaintiff underwent a psychiatric evaluation by Maldonado, who is a staff psychiatrist at FMC Rochester.  See, <u>Declaration of Orlando Maldonado</u>, ("<u>Maldonado Decl.</u>"), <u>Docket No. 12-4</u>, at ¶¶3-4; Exh. B.  Maldonado reviewed the Plaintiff's prior treatment history concerning his major mental illness, and noted that the Plaintiff had suffered a mental disease or defect for a substantial period of time.

On August 29, 2006, a Risk Assessment Panel ("the Panel") convened in order to consider whether the Plaintiff continued to meet the criteria for commitment, under Section 4246.  McKenzie, who is a Staff Psychiatrist at FMC-Rochester, was a member of the Panel.  See, <u>Declaration of John McKenzie</u>, <u>Docket No. 12-5</u>, at ¶4; Exh. C.  The Panel concluded that the Plaintiff continues to suffer from a mental disease or defect, such that his release from custody would create a substantial risk of

bodily injury to another person, or serious damage to the property of another.  Id.  The

Individual Defendants both state that, since the Plaintiff has been incarcerated at

FMC-Rochester, he has been offered medications for his mental health condition, but

that the Plaintiff has refused, or declined to accept them, and that the Plaintiff will

only be medicated involuntarily "on an emergency basis."  Id. at ¶5; Maldonado Decl.

at ¶5.

### III.  Discussion

A.    Standard of Review.  Summary Judgment is not an acceptable means of

resolving triable issues, nor is it a disfavored procedural shortcut when there are no

issues which require the unique proficiencies of a Jury in weighing the evidence, and

in rendering credibility determinations.  See, Wallace v. DTG Operations, Inc., 442

F.3d 1112, 1118 (8th Cir. 2006), citing Celotex Corp. v. Catrett, 477 U.S. 317, 327

(1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th

Cir. 2004), cert. denied, 544 U.S. 977, 125 S. Ct. 1860 (2005).  Summary Judgment

is appropriate when we have viewed the facts, and the inferences drawn from those

facts, in a light most favorable to the nonmoving party, and we have found no triable

issue.  See, Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006), citing

Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003); Eide v. Grey Fox

Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003).

For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party.  See, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 2004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003).

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial."  Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

B.     Legal Analysis.     Since they involve different considerations, we separately address the specifics of each of the Defendants' bases for Summary Judgment.

1.     FMC-Rochester.  As a sovereign power, the United States may be sued only to the extent that it has consented to suit by Statute.  See, United States Dept. of Energy v. Ohio, 503 U.S. 607, 615 (1992); United States v. Mitchell, 445 U.S. 535, 538 (1980).  "Sovereign immunity is a jurisdictional doctrine, and the terms of the United States' 'consent to be sued in any court define that court's jurisdiction

to entertain the suit.'"  Brown v. United States, 151 F.3d 800, 803 (8th Cir. 1998),

quoting FDIC v. Meyer, 510 U.S. 471, 475 (1994); see also, United States v. Mottaz,

476 U.S. 834, 841 (1986)("When the United States consents to be sued, the terms of

its waiver of sovereign immunity define the extent of the court's jurisdiction."), citing

United States v. Sherwood, 312 U.S. 584, 586 (1941).

Waivers of sovereign immunity must be strictly construed in favor of the

sovereign, and may not be enlarged beyond what the language of the waiver requires.

See, United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992); see also, Bowen

v. City of New York, 476 U.S. 467, 479 (1986); Block v. North Dakota, 461 U.S. 273,

287 (1983).  Therefore, the doctrine of sovereign immunity holds that the United

States, and its agencies and instrumentalities -- including the BOP -- are immune from

suit, unless a waiver of such immunity has been "expressed unequivocally" by

Congress.  See, Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991);

United States v. Dalm, 494 U.S. 596, 608 (1990); United States v. Mitchell, supra at

538; Kaffenberger v. United States, 314 F.3d 944, 950 (8th Cir. 2003).

Congress has not waived the sovereign immunity of the United States

Government, or its agencies, for claims that their employees have violated the

Constitution.  See, Bivens v. Six Unknown Named Agents, supra at 410; Buford v.

Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998)("It is well settled that a Bivens action cannot be prosecuted against the United States and its agencies because of sovereign immunity.").  A Federal prisoner in a BOP facility may bring a Bivens claim against an individual officer, subject to the defense of qualified immunity, but "the prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP * * * with respect to the alleged constitutional deprivation, his only remedy lies against the individual."  Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); see also, Buford v. Runyon, 160 F.3d 1199, 1203 (8th Cir. 1998).

Here, the Plaintiff's Bivens claims against the BOP are barred by sovereign immunity.  Further, to the extent that the Plaintiff sues the individual Federal Defendants in their official capacities, the United States is the real party in interest, and sovereign immunity bars those claims.  See, Kentucky v. Graham, 473 U.S. 159, 166 (1985)(suits against public officials acting in their official capacities should be treated as suits against the public entity); Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006)("A suit against a public officer in his official capacity is actually a suit against the entity for which the official is an agent.").  Therefore, the Plaintiff's Bivens claims against the BOP, and the individual Federal Defendants in their official capacities, should be dismissed for lack of subject matter jurisdiction.

- 8 -

2.   <u>Maldonado and McKenzie</u>.  Plainly, the Plaintiff has failed to state a cognizable claim against Maldonado and McKenzie, as the uncontroverted  Record establishes that the Plaintiff has not been  medicated involuntarily since his arrival at FMC-Rochester and, despite the Defendants' offers of medication, they represent that no such medication will be involuntarily administered except on an emergency basis. See, <u>Maldonado Decl.</u>, at ¶5; <u>McKenzie Decl.</u>, at ¶5.  Further, they represent that, prior to any attempt to involuntarily medicate the Plaintiff, except in cases of emergency, an administrative proceeding, with all applicable safeguards, would be conducted.  See, <u>Maldonado Decl</u>, at p. 2, ¶5 n.1, citing <u>28 C.F.R. §549.43</u>.

We, of course, recognize that, in <u>Washington v. Harper</u>, 494 U.S. 210 (1990), the Supreme Court held that incarcerated individuals have a constitutionally protected liberty interest in deciding whether to accept psychiatric medications that have been prescribed by governmental officials.  In the words of the Court, "[w]e have no doubt that * * * respondent possesses a significant liberty interest in avoiding the unwanted administration of anti-psychotic drugs under the Due Process Clause."  <u>Id.</u> at 221.  It follows, the Court ruled, that medications cannot be forcibly administered to individuals, who are confined by governmental agencies, unless (a) there is a specific and legitimate reason for doing so, and (b) the individual in question has been

- 9 -

afforded procedural protections that satisfy the requirements of due process.  Id. at 220 (pointing out that forced medication cases present both substantive and procedural due process issues -- i.e., (i) "what factual circumstances must exist before the State may administer antipsychotic drugs to the prisoner against his will," and (ii) "whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient"); see also, United States v. Ghane, 392 F.3d 317, 319 (8th Cir. 2004).

The Harper case also confirmed that prison officials do, indeed, have certain interests -- in fact, "obligations" -- that may justify the forcible administration of medications to those who are mentally ill, and who are in need of the same.  The Court noted that prison officials are responsible for the care of each individual inmate entrusted to their custody, and that they are also responsible for the safety of all others who work, or reside in, their institutions.  Id. at 225.  In light of these responsibilities, the Court concluded that, subject to appropriate procedural safeguards, prison authorities may, consistent with the substantive due process right to be free from involuntary medication, "treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."  Id. at 227.  In other words, the Plaintiff could potentially be treated on an emergency basis.

- 10 -

The Court then discussed the procedural mechanisms necessary to ensure that the decision to medicate an inmate, against his will, "is neither arbitrary nor erroneous under the standards" that the Court had pronounced to protect prisoners' substantial liberty interests.  Id. at 228.  The Court considered the procedures provided by the State prison's policy which, in a nutshell, provided:  that the decision to involuntarily medicate an inmate be made by a Hearing Committee composed of a psychiatrist, psychologist, and the facility's associate superintendent -- none of whom could be involved in the inmate's treatment or diagnosis; that the prescribed involuntary medication would be upheld if the State established, by a medical finding, that the prisoner had a mental disorder, and was either "gravely disabled" or posed a "likelihood of serious harm" to himself, others, or property; that the committee's decision was subject to review by the facility's superintendent, and that there would be a judicial review, by a State Court.  The prisoner had argued that due process required that a judicial decision-maker render the involuntary medication determination in the first instance, that he should have been provided with counsel at the administrative hearing, and that a "clear, cogent, and convincing" standard of proof was essential.

Here, we find the Plaintiff's Complaint is premature, in addition to being unsupported, since there has been no showing that he will face the prospect of involuntary medication at any time in the foreseeable future, absent some exigent emergency circumstances that we cannot now foresee. In the absence of any evidence that the Defendants have involuntarily medicated the Plaintiff since his arrival at FMC-Rochester, and their averments that no such action is currently contemplated, we find the Plaintiff has failed to create a genuine issue of material fact that would preclude the entry of Summary Judgment in favor of the Defendants, in the absence of any alleged constitutional violation.[2]  See, e.g., <u>Anderson v. Liberty Lobby, Inc.</u>,

---

[2]Since we conclude that the Defendants committed no violation of the Plaintiff's constitutional rights, as he has alleged in his Amended Complaint, we have no legitimate basis to grant any injunctive relief, and we have no occasion to address the question of the Defendants' qualified immunity. As our Court of Appeals explained, in <u>Hinshaw v. Smith</u>, 436 F.3d 997, 1004 (8th Cir. 2006):

> Qualified immunity protects public officials from personal liability under §1983 when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)(internal marks omitted). We first address whether the facts alleged show that the state actor's conduct violated a constitutional right. Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004). If that threshold question is answered in the negative, we need not proceed further, as the
>
> (continued...)

supra at 247-48.   Accordingly, we recommend that the Defendants' Motion for Summary Judgment be granted, and the Plaintiff's Motion "in Opposition" to Dismissal be denied.

In passing, we further note that the Plaintiff, in his supplemental filings, challenges his continued confinement, pursuant to the Order of Commitment issued by the District Court for the Eastern District of North Carolina.  See, <u>Docket No. 4</u>. However, we cannot provide the Plaintiff with any relief, as to that request, for any challenge to the legality of his continued confinement must be brought before the Court which committed him, which is the District Court for the Eastern District of North Carolina.   See, <u>Title 18 U.S.C. §44247(h)</u>("[C]ounsel for the [civilly committed] person or his legal guardian may, at any time during such person's commitment, file **with the court that ordered the commitment** a motion for a

---

[2](...continued)
        defendant is entitled to qualified immunity.
See also, <u>Davis v. Hall</u>, 375 F.3d 703, 712 (8th Cir. 2004)("If the answer to this first inquiry is no, courts do not delve further into the qualified immunity inquiry," but "instead, the defendant is entitled to qualified immunity, and the suit is not permitted to proceed."), citing <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).

As a consequence, as to the presence of qualified immunity, our analysis proceeds no further.

hearing to determine whether the person should be discharged from such facility * * *.").

Indeed, in United States v. Mendez, 2007 WL 2031449 (4th Cir., July 16, 2007), the Court of Appeals for the Fourth Circuit found the Plaintiff's "repeated efforts to have the venue [of his commitment proceedings] moved to the Virgin Islands" to be a frivolous argument, as do we.  Moreover, in that same opinion, the Court of Appeals affirmed the decision of the District Court for the Eastern District of North Carolina, which continued the Plaintiff's commitment pursuant to Title 18 U.S.C. §4246, since even the Plaintiff's "independent clinical and forensic psychologist agreed with the risk assessment prepared by the medical professionals at FMC Rochester."  Id. Accordingly, we find neither a legal, or factual basis to intrude upon the proper adjudications of the District Court for the Eastern District of North Carolina, especially when those adjudications have been affirmed by a Court of competent jurisdiction.

NOW, THEREFORE, It is  --

RECOMMENDED:

1.      That the Defendants' Motion to Dismiss, or in the alternative, for

Summary Judgment [Docket No. 11] be granted.

2.      That the Plaintiff's Motion "in Opposition to Dismissal or Summary

Judgment"[Docket No. 15] be denied.

3.      That this action be dismissed, with prejudice.


Dated:  August 13, 2007                          *s/Raymond L. Erickson*
                                                 Raymond L. Erickson
                                                 CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.2(b), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than**

**August 30, 2007,** a writing which specifically identifies those portions of the Report

to which objections are made and the bases of those objections.  Failure to comply

with this procedure shall operate as a forfeiture of the objecting party's right to seek

review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than August 30, 2007,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.